IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 16-70551 |
| | § | |
| SKYLINE EMS, INC. | § | |
| Debtor | § | CHAPTER 11 |

**This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**

**Represented parties should act through their attorney.**

---

**DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTOR TO UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, (II) GRANTING ADEQUATE PROTECTION TO PRE-PETITION SECURED PARTIES PURSUANT TO 11 U.S.C. §§ 361, 362, 363 AND (III) SCHEDULING FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(b),** *NUNC PRO TUNC* **12/24/2016**

---

TO THE HONORABLE BANKRUPTCY JUDGE EDUARDO V. RODRIGUEZ:

COMES NOW SKYLINE EMS, INC. ("SKYLINE"),  as debtor and debtor-in-possession, and pursuant to §§ 105, 361, 362, and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), moves this Court (this "Motion") to enter an interim order (the "Interim Order") and a final order (the "Final Order") approving and authorizing Debtor to use cash collateral, grant adequate protection to pre-petition Secured Party, and schedule final hearings as necessary. Debtor does not concede that any party has a perfected security interest in cash collateral.  However, for purposes of this Motion and the immediate hearing, Debtor will

presume that the Internal Revenue Service ("The IRS", "IRS", Secured Party"), has perfected interests:

## JURISDICTION AND VENUE

1.      On December 24, 2016 (the "Petition Date"), Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Clerk of this Court.  Debtor continues to operate its business and manage its properties as a debtor in possession pursuant to §§ 1107(a) and 1108.

2.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of Debtor's chapter 11 case and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are Bankruptcy Code §§ 105, 361, 362, and 363, in addition to Bankruptcy Rules 2002, 4001 and 9014.

3.      Debtor's business is the transportation of patients requiring transportation to and from medical providers. Debtor is not a health care provider. These business operations do not constitute "single asset real estate" as that term is defined in Bankruptcy Code § 101(51B).

## FACTUAL BACKGROUND

4.      SKYLINE is a Texas Corporation based in Alton, Texas which owns significant personal property, ambulances and emergency response medical equipment, necessary to operate its emergency patient transportation business.  Debtor is not a health care provider.

5.      SKYLINE began experiencing legal problems when Debtor missed making the payments on its payroll taxes in 2014 and 2015 and thereafter the IRS began garnishing accounts receivable payments due to it from Medicaid, Medicare, and private insurances for services rendered to insured patients.  After the garnishment began, Debtor began falling behind

on its payments to creditors and employees. In an effort to protect its assets, maintain its business as an ongoing concern, and in an effort to reorganize, SKYLINE was forced to file for protection under Chapter 11 of the Bankruptcy Code under prior bankruptcy case 15-70534.

6. Debtor had previously missed making the payments on its payroll taxes in 2014 and 2015 and the IRS has filed its claim for 941 trust taxes.

7. Upon information and belief IRS holds a lien on accounts receivables because of their claims for 941 trust taxes.

8. During the pendency of 15-70534, Debtor fell behind on its post-petition payments of trust fund taxes to the IRS. During the pendency of 15-70534, Debtor began to reorganize its operations and instituted carefully calculated employee layoffs as part of its cost cutting measures. At least one employee filed a fraud complaint with Debtor's main source of revenue – CMS, ("Medicare"). As part of its investigation, Medicare withheld funds from Debtor, causing Debtor to not submit part of 2nd quarter and a large part of the 3rd quarter employee trust funds to the IRS.

9. As a result of the withheld payments to Debtor, the Debtor's accounts receivables have increased from 661,330.47 to 1,012,400.51.

10. Although, the Debtor was cleared following the Medicare investigation, Debtor fell behind in its post-petition payments to the IRS. Once payments resumed, Debtor paid off 4th quarter and began paying off 3rd quarter post-petition IRS trust fund debt.

11. This case was dismissed on December 13, 2016 and almost immediately, the IRS began levying on the Debtor's revenue from Medicare.

12. Upon information and belief, within 10 days after the prior case was dismissed, the IRS levied on over $30,000 of the Debtor's revenue from Medicare.

13. This petition under the above caption was filed in order to protect Debtor's operations

and services.

**THE PREPETITION COLLATERAL**

14. The Secured Party will need to make a *prima facie* showing of a perfected lien in their favor on Debtor's personal property as of the commencement of this chapter 11 case.

15. The major valuable pieces of the Secured Party's collateral are its alleged security interests in the personal property owned by Debtor.

16. Debtor's Accounts Receivables are enough to pay off the alleged IRS tax claims, almost 3 times over.

**RELIEF REQUESTED**

17. Pursuant to section 363(c)(2) of the Bankruptcy Code, Debtor requests that this Court authorize and approve Debtor's use of IRS' (if any) cash collateral for the payment of Debtor's operating expenses as set forth in the Budget attached hereto as Exhibit "A", including all prepetition payroll amounts and related payroll costs, and payment of insurance.

18. Debtor further requests that this Court authorize and approve Debtor's use of cash collateral for the payment of any fees and expenses owed to professionals employed by it ("Professional Expenses") upon the entry of an order from this Court authorizing the payment of such Professional Expenses including an appropriate carve out.

**BASIS FOR RELIEF**

A. Use of Cash Collateral and Adequate Protection

19. Section 363(c)(2) of the Bankruptcy Code governs the Court's approval of the use of cash collateral and provides that a debtor "may not use, sell, or lease cash collateral…unless (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). Section 363(e) of the Bankruptcy Code provides that upon request of an entity that has

an interest in property to be used by a debtor, the court shall prohibit or condition such use as is necessary to provide adequate protection of such interest.  11 U.S.C. § 363(e).

20.     A debtor has the burden to establish that the holder of a lien to be subordinated, or whose cash collateral will be used, has adequate protection.  11 U.S.C. § 363(p)(1).  Adequate protection must be determined on a case-by-case basis, permitting a debtor maximum flexibility in structuring its adequate protection proposal.  *See In re Martin*, 761 F.2d 472, 474 (8th Cir. 1985);  *In re George Ruggerie Chrysler-Plymouth, Inc.*, 727 F.2d 1017, 1019 (11th Cir. 1984).  Nonetheless, "[a] debtor, attempting to reorganize a business under chapter 11, clearly has a compelling need to use 'cash collateral' in its effort to rebuild." *George Ruggerie*, 727 F.2d at 1019.

21.     Debtor needs immediate authority to use the cash collateral to fund Debtor's day- to-day operations and ultimately achieve a successful reorganization.   Specifically, Debtor requires the use of cash collateral for the payment of the operating expenses included in the Budget, including payments of insurance, US trustee fees, adequate protection, general maintenance costs on the property, utility costs if any, and traveling expenses incurred by Debtor's principal.

22.     The foregoing expenses are reasonable and necessary business expenses which must be paid in order to maintain and preserve its assets and to continue the operation of its business. Debtor currently has no present alternative borrowing source from which it can secure additional funding to operate its business.  In sum, the failure to obtain authorization for the use of the Cash Collateral will be fatal to Debtor and disastrous to its creditors, both secured and unsecured.

23.     As adequate protection for the use of cash collateral, Debtor contends that the Secured Party equity cushion in their collateral is more than sufficient adequate protection. Courts have held that the existence of an equity cushion  in collateral  suffices  as  ample  adequate  protection  to  allow  a  debtor  to  use  cash collateral.  *See, e.g.*, *In re Las Torres Dev.*,

*L.L.C.*, 413 B.R. 687, 696 (Bankr. S.D. Tex. 2009); *In re Triplett*, 87 B.R. 25, 27 (Engs and FPLr. W.D. Tex. 1988); *In re McCombs Properties VI, Ltd.*, 88 B.R. 261, 266 (Engs and FPLr. C.D. Cal. 1988); *In re Harrington & Richardson, Inc.*, 48 B.R. 431, 433-34 (Bankr. D. Mass. 1985). Therefore, Debtor submits that the Secured Party are already adequately protected and thus grounds exist to allow Debtor to use cash collateral.

24. As additional (though unnecessary) adequate protection, Debtor proposes to grant the Secured Party a replacement perfected security interest under section 361(2) of the Bankruptcy Code (i) to the extent the Secured Party's cash collateral is used by Debtor, and (ii) to the extent and with the same priority in Debtor's postpetition collateral, and proceeds thereof, that the Secured Party hold in Debtor's prepetition collateral.

25. The replacement lien that Debtor proposes to grant to the Secured Party shall be deemed to be perfected automatically upon entry of the Interim Order. *See Small v. Bank*, 936 F.2d 945, 948-49 (7th Cir. 1991).

26. Although not required, upon request by the Secured Party, Debtor shall execute and deliver to the Secured Party any and all UCC Financing Statements, and UCC Continuation Statements, or other instruments or documents requested and considered by the Secured Party to be necessary in order to perfect the security interest and liens granted by this Order, and the Secured Party are authorized to receive, file and record the foregoing, which actions shall not be deemed a violation of the automatic stay. Any such filing shall be without prejudice to all claims that Debtor asserts against the Secured Party in any avoidance or other action or that the Secured Party are not perfected in the cash collateral. The Secured Party shall not make any further charges against Debtor for such documentation.

27. In addition, Debtor proposes to provide the Secured Party with a timely copy of Debtor's chapter 11 monthly operating reports, and any other reports requested and reasonably required by the Secured Party shall be provided by Debtor.

28. In the event that this Court does not authorize Debtor's use of cash collateral, Debtor believes that it will be unable to maintain its current business operations and propose a successful plan of reorganization.

29. Debtor believes that the proposed adequate protection is fair and reasonable and sufficient to satisfy any diminution in value of the Prepetition Collateral.

### B. Interim Approval Should Be Granted

30. Rule 4001(b) of the Federal Rules of Bankruptcy Procedure provides that a final hearing (the "Final Hearing") on a motion to use cash collateral pursuant to §363 may not be commenced earlier than fourteen (14) days after the service of such motion. Upon request, however, the court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral and the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.

31. Pursuant to Rule 4001(b), Debtor requests that the Court conduct an expedited preliminary hearing on the Motion (the "Interim Hearing") and grant the relief requested in the proposed Interim Order in order to (a) maintain Debtor's ongoing operations and (b) avoid the immediate and irreparable harm and prejudice to Debtor's estates and all parties in interest that would otherwise ensue.

32. Debtor has an urgent and immediate need for cash to continue to operate. Debtor will be immediately and irreparably harmed absent authorization from the Court to use cash collateral as requested on an interim basis pending a Final Hearing on the Motion. In the short-term, if Debtor is unable to pay its costs as proposed in the Proposed Budget, the tenants will leave and the property will not be maintained and preserved, actions which likely will have a long-term negative impact on the value of Debtor's business, to the detriment of all parties in interest.

### REQUEST FOR FINAL HEARING

33. Debtor also requests that the Court schedule the final hearing during the week that is

four weeks after the date of this Motion, with objections, if any, to the Final Order being due in writing on or before the date that is at least seven (7) business days prior to the Final Hearing.

**NOTICE AND PRIOR MOTIONS**

34. Notice of this Motion has been provided to (1) the Office of the Bankruptcy Administrator for the United States Bankruptcy Court for the Southern District of Texas, McAllen Division; (2) The Secured Party; (3) Debtor's twenty (20) largest unsecured creditors; and (4) the Internal Revenue Service.

**WHEREFORE**, Debtor respectfully requests that the Court enter an order substantially similar to the order attached hereto and further relief as this Court may deem just and proper.

Dated: January 11, 2017            Law Office of Antonio Martinez, Jr., P.C.

*/s/ Antonio Martinez, Jr.*
Antonio Martinez, Jr.
317 W. Nolana Ave. Ste C
McAllen, TX 78504
956-683-1090
Fax : 956-683-1090
Email: martinez.tony.jr@gmail.com
*Attorney for Debtor Skyline EMS, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing "**DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTOR TO UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, (II) GRANTING ADEQUATE PROTECTION TO PRE-PETITION SECURED PARTIES PURSUANT TO 11 U.S.C. §§ 361, 362, 363 AND (III) SCHEDULING FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(b),** *NUNC PRO TUNC* **12/24/2016"** has been served on the United States Trustee and all parties registered with the ECF system on this case via electronic notice.

Date: 1/11/2017

/s/ Antonio Martinez, Jr.
Antonio Martinez, Jr.

In re: Skyline EMS, Inc.
16-70551
Monthly Operating Budget

| | |
|---|---:|
| 1. Gross Income for 12 Months Prior to Filing: | $2,085,365.22 |
| 2. Gross Monthly Income: | $135,000.00 |

PART C - ESTIMATED AVERAGE FUTURE MONTHLY EXPENSES:

| | |
|---|---:|
| 3. Net Employee Payroll (Other Than Debtor): | $50,000.00 |
| 4. Payroll Taxes: | $20,000.00 |
| 5. Unemployment Taxes: | $6,500.00 |
| 6. Worker's Compensation: | $0.00 |
| 7. Other Taxes: | $0.00 |
| 8. Inventory Purchases (including raw materials): | $1,500.00 |
| 9. Purchase of Feed/Fertilizer/Seed/Spray: | $0.00 |
| 10. Rent (other than debtor's principal residence): | $2,000.00 |
| 11. Utilities: | $2,000.00 |
| 12. Office Expenses and Supplies: | $1,500.00 |
| 13. Repairs and Maintenance: | $5,106.00 |
| 14. Vehicle Expenses: | $8,000.00 |
| 15. Travel and Entertainment: | $300.00 |
| 16. Equipment Rental and Leases: | $2,000.00 |
| 17. Legal/Accounting/Other Professional Fees: | $1,500.00 |
| 18. Insurance: | $4,000.00 |
| 19. Employee Benefits (e.g., pension, medical, etc.): | $0.00 |
| 20. Payments to be Made Directly by Debtor to Secured Creditors for Pre-Petition Business Debts (Specify): | None |
| 21. Other (Specify): None | None |
| 22. Total Monthly Expenses (Add items 3 - 21) | $104,406.00 |

PART D - ESTIMATED AVERAGE NET MONTHLY INCOME:

| | |
|---|---:|
| 23. AVERAGE NET MONTHLY INCOME (Subtract item 22 from item 2): | $30,594 |